IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EVALYN D. COFFEE,

    Plaintiff,

v.                                                                              Civil Action No. 3:14-cv-262-JAG

DEPARTMENT OF JUVENILE JUSTICE, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' motion to dismiss. (Dk. No. 28.) The plaintiff, a former correctional officer at Virginia's Department of Juvenile Justice, brings two counts—a retaliation claim under Title VII, and a discrimination claim under the Americans with Disabilities Act—against her erstwhile employer in her Particularized Complaint.[1]

The plaintiff does not allege facts showing the required elements of a Title VII retaliation claim, and her ADA claim for money damages against a state agency is barred by the Eleventh Amendment. Accordingly, as discussed in greater detail below, the Court will GRANT the defendants' motion to dismiss.

## I. MATERIAL FACTS

Coffee worked at the DJJ's Bon Air Juvenile Correctional Facility until her voluntary resignation on June 27, 2013. (Am. Compl. ¶ 81.) The latter stages of Coffee's time there were

---

[1] The plaintiff, Evalyn Coffee, has also named Major Kenneth Washington (the DJJ's chief of security)—in his official capacity—as a defendant. A suit against a person in his official capacity is actually a suit against the entity for which he works. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Since the DJJ is a defendant, the Court will dismiss the official capacity claims against Major Washington as superfluous. *See Brissett v. Paul*, 141 F.3d 1157, at *1 (4th Cir. 1998) ("[Naming] the local governments that employed [the officials] and naming the local officials in their official capacities was, therefore, redundant and unnecessary.").

eventful, with Coffee and her supervisor swapping allegations of misconduct. On February 19, 2012, Coffee submitted a 12-page complaint to the former Bon Air superintendent listing "her issues of harassment and concern." (*Id.* ¶ 80.)[2] She received no response. (*Id.*)

Coffee took disability leave from January 20, 2013, to June 26, 2013, to undergo and recover from two foot surgeries. (*Id.* ¶ 79.) Coffee hoped to return to work on light duty in late March 2013, after her initial surgery, to "save some [of her] time" before leaving again to undergo the second surgery. (*Id.* ¶ 23-35, 55-56.) Major Washington, after an apparent consultation with Human Resources, denied her request to return to light duty, citing the fact that Coffee would only be able to work for a period of nine days before leaving. Coffee remained on disability leave. (*Id.* ¶ 54.) While on disability leave, she testified—as a witness "against the [DJJ]"—at a March 27 hearing for Vertina Muwonge, a former correctional officer (and co-worker of Coffee's) who had been recently "wrongfully terminated" by the DJJ. (*Id.* ¶ 22-23.) Coffee claims her supervisors knew of her scheduled testimony as early as March 15, 2013. (*Id.*)

Coffee underwent her second surgery on April 11, 2013. (*Id.* ¶¶ 49-56.) Shortly afterwards, while still on disability leave, Coffee learned that the April 22, 2013, "Duty Roster" for the Bon Air facility listed her status as "(COFFEE-VSDP) WILL BE REASSIGNED OR TRANSFERRED." (*Id.* ¶ 79, Exhibit A.)

Coffee was released to return to work, without limitation, on June 26, 2013. (Def. Memo in Supp., 7 at ¶ 9.) Coffee returned to work, but resigned the following day "out of fear of what happened to Senior Officer Vertina Muwonge" and because of Major Washington's desire, as embodied in the April 22, 2013 duty roster, "to transfer or reassign her." (*Id.* ¶ 81.)

---

[2] Coffee does not provide any details as *what* her complaint alleged, or *who* provoked it (although she later tells a supervisor of a "complaint" she had "written [] on Captain Corey Ward"). (*Id.* ¶ 17.) The Court, accordingly, remains in the dark as to the nature of her grievance(s). Because the Court cannot invent facts for the plaintiff's benefit, the Court cannot presume the complaint dealt with Title VII discrimination.

## II. STANDARD OF REVIEW

The defendants move to dismiss Coffee's Title VII retaliation claim under Fed. R. Civ. Pro. 12(b)(6). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a claim, but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Court must "take the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000). While entitled to more lenient judicial expectations than represented litigants, a *pro se* plaintiff is still required to meet the burden of pleading facts sufficient to satisfy each individual element of her claim. *Id.* at 346.

The defendant's motion to dismiss Coffee's ADA discrimination claim proceeds under Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) places the burden on the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). Where, as here, the motion to dismiss asserts that the complaint is facially deficient as to subject matter jurisdiction, the plaintiff is afforded "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," such that "the facts alleged in the complaint are assumed to be true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). Accordingly, the Court reviews the Particularized Complaint to determine whether it "fails to allege facts upon which subject matter jurisdiction can be based." *Id.*

## III. DISCUSSION

Coffee's Title VII retaliation claim fails as a matter of law because she fails to allege facts that would entitle her to Title VII protection *or* that could establish that she suffered an adverse employment action. Coffee's ADA discrimination claim fails at the outset: the Eleventh Amendment bars claims for money damages against the state by citizens. Because Coffee's claim demands only money damages from the State of Virginia, it must also be dismissed.

### A. Retaliation Claim (Title VII)

In order to establish a claim for "retaliation" under Title VII, a plaintiff must plead facts sufficient to demonstrate that: (1) she engaged in protected activity; (2) subsequently suffered an adverse employment action; (3) and there is a causal link between the protected activity and the adverse employment action. *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

Coffee's retaliation claim, summarized, alleges that (1) she testified as a witness in a hearing (presumably in a fashion contrary to the DJJ's interests) where her employer was an interested party; (2) afterwards, that same employer threatened to "transfer or reassign" her elsewhere, (3) as retaliation for Coffee's participation in the aforementioned hearing. Coffee cannot establish either of the first two elements, foreclosing her ability to satisfy the third.

#### *1. Protected Activity*

For the purposes of a Title VII retaliation claim, a plaintiff engages in "protected activity" when she: (1) makes a charge or (2) testifies, assists, or participates in any manner in a Title VII investigation, proceeding or hearing. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Coffee alleges that her testimony at Vertina Muwonge's hearing constitutes protected activity. Even under the lenient standard of review identified in *De Sole*, Coffee's appeal for protected status fails. The Court, provided only with the bald allegation that Coffee was a witness at a "hearing," cannot invent the facts or circumstances necessary to

4

justify drawing an inference that the "hearing" in question concerned Title VII discrimination claims. An employee v. employer "hearing"—on its face—does not imply any particular subject matter (other than one side's dissatisfaction with the other), let alone something as contentious and volatile as the type of discrimination prohibited by Title VII.

Because Coffee does not allege that the hearing she participated in dealt—in any way—with Title VII charges or claims, she is not entitled to that statute's protective umbrella.

### 2. *Adverse Employment Action*

Coffee also alleges that the DJJ's apparent decision (per the April 22 duty roster) to transfer or reassign her—somewhere—constitutes an adverse employment action. An "adverse employment action" is one that a "reasonable employee" would have found "materially adverse"—that is, a consequence which "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). The Supreme Court emphasized that the plaintiff must allege "*material* adversity," from the perspective of a "*reasonable* employee," noting that "we believe it is important to separate significant from trivial harms." *Id.*

A transfer or reassignment, standing alone, does not meet this standard—a plaintiff must instead demonstrate that the move will entail a deleterious change in the "salary, job title, level of responsibility, or opportunity for promotion" of their employment. *See Cole v. Hill Phoenix, Inc.*, No. 3:12CV621, 2013 WL 499341, at *12 (E.D. Va. Feb. 7, 2013) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)); *see also Tennessee v. Murphy-Brown, L.L.C.*, 834 F. Supp. 2d 449, 457-58 (E.D. Va. 2011); *Rivera v. Prince William Cnty. Sch. Bd.*, No. 1:09CV341, 2009 WL 2232746, at *7 (E.D. Va. July 22, 2009). A plaintiff must allege facts showing that she will suffer a corresponding detriment *beyond a simple distaste for her new position*:

> The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action." There must be some significant detrimental effect and "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position."

*Holland*, 487 F.3d at 219 (internal quotations omitted); *see also Cole*, at *12; *Bauknight v. Pope*, No. 1:11CV1176, 2012 WL 681632 (E.D. Va. Feb. 27, 2012), *appeal dismissed* (Aug. 23, 2012).

Coffee alleges nothing more than the bald fact that a duty roster—published during her extended medical leave—noted that she was to be transferred or reassigned. She does *not* claim that the apparently impending transfer would result in a pay-cut, a loss of responsibility, diminishment of promotion chances, unpalatable new job duties, or any other "significant detrimental effect." *Id.* Coffee's ability to demonstrate such impending adversity is hampered, of course, by her own apparent disinterest in the specifics or likelihood of that transfer, and the fact that the aforementioned transfer *never occurred*.[3] Whatever the transfer or reassignment might have entailed—had it actually come to fruition—remains shrouded in uncertainty for both Coffee and the Court.

The law requires Coffee to demonstrate that a "reasonable employee" would have found the transfer in question "materially adverse"—in the Fourth Circuit, Coffee must allege that her change of scenery would have "some significant detrimental effect" on her. *Holland*, at 219. Because Coffee makes no attempt to explain (or even to determine) the details of her potential transfer, she cannot (and does not attempt to) plausibly allege that her new employment

---

[3] Coffee does not contest the defendants' statement that she "was released to return to work . . . on June 26, 201[3]. Rather than return to work, Coffee voluntarily resigned her job on June 27, 2013." (Memo in Support, 7 at ¶ 9.) Nor does Coffee allege that she resigned because the transfer she feared had actually occurred (or that she had ever sought any explanation or information from her superiors as to the details or likelihood of that transfer during the two months between when she *first* learned of the duty roster and when she returned to the DJJ).

conditions would have been materially worse than that of the position she previously occupied—and was permitted to return to. Coffee cannot show that she suffered an adverse employment action.[4]

Accordingly, Coffee's Title VII retaliation claim must be dismissed.[5]

### B. Disability Claim (ADA)

The Eleventh Amendment immunizes "an unconsenting State . . . from suits brought in federal courts by her own citizens." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citing *Hans v. Louisiana*, 134 U.S. 1, 17 (1890)). This protection extends to state agencies and state officials. *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Bland v. Roberts*, 730 F.3d 268, 390 (4th Cir. 2013). States can abrogate their sovereign immunity for specific varieties of claims, but Virginia has not done so for claims arising under Title I of the ADA. *See Marsh v. Virginia Dep't of Transp.*, No. 6:14-CV-00006, 2014 WL 2712157 (W.D. Va. June 16, 2014); *Haley v. Virginia Dep't of Health*, No. 4:12-CV-00016, 2012 WL 5494306 (W.D. Va. Nov. 13, 2012); *Smith v. Virginia Dep't of Agric. & Consumer Servs.*, No. 3:12CV77, 2012 WL 2401749 (E.D. Va. June 25, 2012). Accordingly, Coffee's Title I ADA claim against the DJJ, a state agency, must be dismissed. *See McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014).

---

[4] Coffee also alleges that she "was forced to resign" because (1) she feared that the DJJ would wrongfully terminate her and/or (2) her supervisor wanted to transfer or reassign her. The Court will construe this allegation as comprising a constructive discharge claim—that Coffee's resignation was in itself an "adverse employment action" by the DJJ. A constructive discharge claim requires Coffee to show, among other things, "the objective intolerability of the working conditions." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 183 (4th Cir. 2004). Coffee does not allege facts showing that her employment at the DJJ was "objectively intolerable"—in fact, the entirety of Coffee's alleged grievances occurred while she was *absent from the DJJ* on disability leave. Coffee's complaint cannot support a constructive discharge claim.

[5] Because Coffee cannot establish that she engaged in protected activity *or* that she suffered an adverse employment action, she necessarily cannot demonstrate the third and final element (of a "causal nexus") of her Title VII retaliation claim.

## IV. CONCLUSION

For the reasons above, the Court GRANTS the defendant's motion to dismiss.

The Clerk shall enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and the pro se plaintiff.

Date: July 18, 2014
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge